# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| JOHN DAVID PAMPLIN,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>JUSTIN LIBBY, et al.,<br><br>　　　　　　Defendants. | 3:18-cv-00532-MMD-CLB<br><br>**REPORT AND RECOMMENDATION<br>OF U.S. MAGISTRATE JUDGE**[1] |

This case involves a civil rights action filed by Plaintiff John David Pamplin ("Pamplin") against Defendant Justin Libby ("Libby"). Currently pending before the court is Libby's motion for summary judgment. (ECF No. 28).[2] Pamplin responded (ECF No. 31) and Libby replied (ECF No. 32). Having thoroughly reviewed the record and papers, the court hereby recommends Libby's motion for summary judgment be granted.

**I. Factual Background and Procedural History**

Pamplin is an inmate in the custody of the Nevada Department of Corrections ("NDOC"), currently housed at Ely State Prison ("ESP"). (ECF No. 1-1 at 1). Proceeding *pro se* and *in forma pauperis*, Pamplin submitted a civil rights complaint pursuant to 42 U.S.C. § 1983 on November 6, 2018. (ECF No. 1-1). On August 23, 2019, the District Court entered a screening order permitting Pamplin to proceed with a single Religious Land Use and Institutionalized Persons Act ("RLUIPA") claim. (ECF No. 7). The District court dismissed all other claims with leave to amend. (*Id.*) Pamplin never sought to amend.

---

[1] This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4.

[2] An errata to the motion was filed at ECF No. 30.

1

**A. Pamplin's RLUIPA Claim**

On March 7, 2017, Pamplin received a KJV Bible and other religious material from Harvest Time Books. (ECF 28-1). That is a different Bible than the one at issue in this case, which has been in Pamplin's possession since 2002. (ECF No. 31 at 3). In an inventory form dated March 1, 2018, Libby noted Pamplin was in possession of four religious items. (ECF No. 28-2). Pamplin states one of the four items noted was his personal Bible that is now missing. (ECF No. 31 at 4). In his complaint, Pamplin alleges on March 2, 2018 correctional officers Libby and Tintiangco[3] took and destroyed Pamplin's personal Bible and Black's Law Dictionary during a "roll-up"[4]. (ECF No. 8 at 5). Pamplin argues the destruction of his personal Bible places a substantial burden on his ability to practice his religion in violation of the RLUIPA. (ECF No. 31 at 5). A subsequent inventory conducted on September 13, 2018 states Pamplin was in possession of a Bible before the commencement of this case. (ECF No 28-14).

**B. Administrative Process**

On March 7, 2018, Pamplin filed an informal grievance alleging the same facts set forth in his complaint. (ECF No. 31 at 11). Pamplin's grievance history shows that on March 7, 2018, before he filed the grievance related to this case, Pamplin filed a separate grievance based on unrelated events. (ECF No. 28-11 at 2-3) (*see also* ECF No. 32-1). Pamplin's informal grievance alleging Libby destroyed his Black's Law Dictionary and personal Bible was denied due to an abuse of the grievance procedure – filing more than one grievance in a week – and an improper grievance memo was issued on March 27, 2018. (ECF No. 28-10). The improper grievance memo contains Pamplin's signature and a witness's signature acknowledging Pamplin received the memo. *Id.* Pamplin

---

[3] Pursuant to Federal Rule of Civil Procedure 4(m), this action was dismissed without prejudice as to Russell Tintiangco. (ECF No. 27).

[4] "Rolled up" is a slang term indicating the officer's searched and inventoried the items in his cell.

2

subsequently filed a "first level" grievance alleging the same violation of the RLUIPA stated in his informal grievance. (ECF No. 31 at 12). This grievance was denied for the same reasons set forth in the informal grievance and another improper grievance memo was issued. (ECF No. 28-12). This second improper grievance memo does not bear Pamplin's signature, (*Id.*), and Pamplin subsequently filed a "second level" grievance alleging the same facts as the two previous grievances. (ECF No. 31 at 13). The second level grievance was denied for the reasons previously discussed and Pamplin signed the third improper grievance memo on June 27, 2018. (ECF No. 28-13). Pamplin commenced this action on November 6, 2018. (ECF No. 1-1).

**II. Legal Standard**

Summary judgment should be granted when the record demonstrates that "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). "[T]he substantive law will identify which facts are material." *Id.* A dispute is "genuine" only where a reasonable jury could find for the nonmoving party. *Id.* Conclusory statements, speculative opinions, pleading allegations, or other assertions uncorroborated by facts are insufficient to establish a genuine dispute. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007); *Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081–82 (9th Cir. 1996).

Summary judgment proceeds in burden-shifting steps. A moving party who does not bear the burden of proof at trial "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element" to support its case. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Ultimately, the moving party must demonstrate, on the basis of authenticated evidence, that the record forecloses the possibility of a reasonable jury finding in favor of the nonmoving party as to disputed material facts. *Celotex*, 477 U.S. at 323; *Orr v. Bank of Am., NT & SA*, 285

F.3d 764, 773 (9th Cir. 2002). The court views all evidence and any inferences arising therefrom in the light most favorable to the nonmoving party. *Colwell v. Bannister*, 763 F.3d 1060, 1065 (9th Cir. 2014).

Where the moving party meets its burden, the burden shifts to the nonmoving party to "designate specific facts demonstrating the existence of genuine issues for trial." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citations omitted). "This burden is not a light one," and requires the nonmoving party to "show more than the mere existence of a scintilla of evidence. . . . In fact, the non-moving party must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." *Id.* (citations omitted). The nonmoving party may defeat the summary judgment motion only by setting forth specific facts that illustrate a genuine dispute requiring a factfinder's resolution. *Anderson*, 477 U.S. at 248; Celotex, 477 U.S. at 324. For purposes of opposing summary judgment, the contentions offered by a pro se litigant in motions and pleadings are admissible to the extent that the contents are based on personal knowledge and set forth facts that would be admissible into evidence and the litigant attested under penalty of perjury that they were true and correct. *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004).

**III. Discussion**

**A. Failure to Exhaust**

The Prison Litigation Reform Act ("PLRA") states "[n]o action shall be brought . . . under section 1983 . . . by a prisoner confined in any . . . correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e (a). To meet the PLRA's requirements an inmate must exhaust all "available" administrative remedies before seeking relief from the courts. *Woodford v. Ngo*, 548 U.S. 81, 85 (2006). The exhaustion mandate requires an inmate to comply "with an agency's deadlines and other critical procedural rules." *Id.* at 90-91 (reasoning "no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings").

Moreover, the mandatory language of the PLRA means a court may not excuse a failure to exhaust, even to take "special circumstances" into account. *Ross v. Blake*, 136 S.Ct. 1850, 1857 (2016)

However, the PLRA contains its own textual exception. *Ross*, 136 S.Ct at 1858; *Booth v. Churner*, 532 U.S. 731, 738 (2001). An inmate is required to exhaust only those grievance procedures that are "available." *Booth*, 532 U.S. at 738 (2001). An administrative procedure is available when it is "capable of use" to obtain "some relief for the action complained of." *Ross, 136 S.Ct at 1860* (*Citing Booth,* 532 U.S. at 738 (2001)). In *Ross*, the Court noted three scenarios where an administrative remedy is not capable of use to obtain relief. *Id.* at 1859. "First, an administrative procedure is unavailable when it operates as a simple dead end – with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." *Id.* Third, "when prison administrator's thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1860.

NDOC has a detailed and straightforward inmate grievance procedure whereby inmates can seek redress for misconduct through the submission of complaints. (ECF No. 28-9). The administrative process, stated in Administrative Regulation ("AR") 740, begins with an informal grievance. (ECF No. 28-9 at 7). If the issue concerns personal property loss, the inmate has six months to file an informal grievance. (*Id.* at 8). Once an informal grievance is filed, the grievance is investigated and responded to by the staff member that has responsibility over the issue. (*Id.* at 7.) In the case of property grievances, the Property Sergeant is responsible for the investigation. (*Id.*) If the inmate is dissatisfied with the resolution, the inmate may appeal the decision to the "first level," where the grievance is "reviewed, investigated, and responded to by the Warden." (*Id.* at 10.) If the inmate is still dissatisfied with the resolution at the first level, they may appeal the decision to the "second level," where a complaint regarding property is reviewed and

5

responded to by the Deputy Director of Support Services. (*Id.* at 11.) Moreover, when an inmate files more than one grievance during a seven-day week – that is, Monday through Sunday– the grievance will be rejected and cannot proceed to the next level. (*Id.* at 5.)

It is clear from the record before the court that Pamplin failed to follow the detailed NDOC grievance procedure. In Libby's motion for summary judgment, he attached detailed evidence and sworn affidavits showing Pamplin failed to follow the AR 740. (*see* ECF No. 28). The inmate grievance log, which was submitted with an Authenticating Declaration by David Drummond, (ECF No. 30-1), shows Pamplin filed two separate grievances on March 7, 2018. (ECF No. 28-11 at 2-3). Additionally, Libby has provided this court with a copy of the first informal grievance (ECF 32-1) and the subsequent second informal grievance (ECF No. 28-8). Both informal grievances are dated March 7, 2018 and bear Pamplin's signature. (ECF No. 28-8; 32-1). Libby further submitted to the court the improper grievance memo, signed by Pamplin and a witness, which stated Pamplin's grievance was denied due to "abuse of inmate grievance procedure" by filing "more than one grievance per week, Monday through Sunday." (ECF No. 28-10). Therefore, the evidence submitted by Libby shows Pamplin submitted two separate grievances on March 7, 2018 abusing the grievance procedure.

After Libby filed his motion for summary judgment, putting forth evidence of Pamplin's failure to exhaust by abusing the grievance procedure, Pamplin bore the burden of demonstrating facts that create a genuine issue for trial. *In re Oracle Corp. Sec. Litig.*, 627 F.3d at 387. While Pamplin's firsthand account of the events would be evidence considered at trial, *Jones*, 393 F.3d at 923, Pamplin must show the existence of more than a mere "scintilla of evidence" that would allow a reasonable jury to conclude that he did, in fact, exhaust all available administrative remedies. *In re Oracle Corp. Sec. Litig.*, 627 F.3d at 387. Pamplin's contention that he did not submit multiple grievances on March 7, 2018 is directly contradicted by the evidence before this court. (see ECF No.

6

28-8; 30-1; 32-1). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 US 372, 380 (2007). Therefore, Pamplin has failed to show that a genuine dispute requiring a factfinder's resolution exists. *See Celotex*, 477 U.S. at 323.

Additionally, the NDOC procedure did not render the grievance process incapable of use. *See Booth*, 532 U.S. at 738 (2001). The rule is clear; only one complaint may be filed Monday through Sunday. (ECF No. 28-9 at 4). Pamplin had six months to correctly file an informal complaint under AR 740.05(4)(A). *Id.* at 8. After Pamplin's informal grievance was rejected on March 27, 2018 due to abuse of procedure (ECF No. 28-10), he still had over five months to file a proper informal grievance. (ECF No. 28-9 at 8). Pamplin's ability to correct his mistake by simply filing an informal grievance the next week shows that this procedural rule does not act as a "dead end" to the administrative process. *Ross*, 136 S.Ct. at 1860 (stating a dead end exists when there is no possibility of relief). Pamplin's own decision to not follow the clear administrative procedure does not permit him to sidestep the exhaustion requirements of the PLRA. *See Ngo*, 548 U.S. at 90. Because Pamplin had ample time to correct his mistake, the administrative process remained "available" to him. *See Ross*, 136 S.Ct. at 1860. Therefore, summary judgment is proper due to Pamplin's failure to exhaust the available administrative remedy.

**B. RLUIPA**

Even if Pamplin had properly exhausted his administrative remedies, summary judgment is still proper. RLUIPA provides in pertinent part: "no government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability." 42 U.S.C. § 2000cc-1(a)(1). RLUIPA defines religious exercise to include "any exercise of religion, whether or not compelled by or central to, a system of religious belief." 42 U.S.C. §

2000cc-5(7)(A). In its application of RLUIPA, the court must begin by "identifying the religious exercise allegedly impinged upon." *Greene v. Solano County Jail*, 513 F.3d 982, 987 (9th Cir. 2008). Then, the court must decide whether there was substantial burden placed on that religious exercise. *Id.* If the court finds that a religious exercise was substantially burdened, the government must show that the burden imposed is "in furtherance of a compelling governmental interest; and is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc-1(a)(1)-(2); *see also Greene*, 513 F.3d at 986.

Pamplin asserts Libby destroyed his personal Bible and as a result violated RLUIPA. (ECF No. 8 at 5). According to Pamplin's allegations the religious exercise at issue is access to his religious scripture, or in this case, a Bible. *See Greene*, 513 F.3d at 987. Given the broad definition of religious exercise, the practice of reading religious scripture is protected under the RLUIPA framework. See 42 U.S.C. § 2000cc-1(a)(1)-(2); *Greene*, 513 F.3d at 987. While a complete bar to a religious exercise is a substantial burden, *Greene, 513 F.3d* at 988, Pamplin has not put forth any evidence suggesting he was denied access to a Bible. (*See* ECF No. 31).

On March 7, 2017, an incoming approved book package form signed by Pamplin confirms Pamplin received a KJV Holy Bible, the Book of Revelation, and Patriarchs and Prophets a year before the events at issue occurred. (ECF No. 28-1). The Bible Pamplin alleges was destroyed is not the KJV Bible, but rather a personal Bible that Pamplin claims he obtained in 2002. (ECF No. 31 at 3). Pamplin states that the March 2, 2018 inventory search accounted for this personal Bible when Libby noted Pamplin was in possession of four religious items. *Id.* at 4. A subsequent inventory search conducted on September 13, 2018 shows Pamplin was in possession of a Bible and miscellaneous religious pamphlets before the commencement of this action. (ECF No. 28-14). Pamplin does not refute the contention that he received the KJV Bible, nor does he claim he did

not possess a Bible on September 13, 2018 before the commencement of this action. (See ECF No. 31).

While the court is sympathetic to Pamplin's alleged loss of a sentimental Bible, the RLUIPA protects access to a Bible generally, not to a Bible that holds sentimental value due to reasons wholly unrelated to religion. *Cf. Greene*, 513 F.3d at 986. Because Pamplin has offered no evidence suggesting his access to a Bible was substantially burdened and the uncontested evidence before the court shows he had a Bible on September 13, 2018, no reasonable jury could find that there was a substantial burden placed on Pamplin's religious exercise. *Cf. Harris*, 550 US at 380. Therefore, Pamplin has failed to meet his evidentiary burden to show a genuine issue of material fact exists and Libby is entitled to judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 330.

**IV. Conclusion**

For good cause appearing and for the reasons stated above, the court recommends Libby's motion for summary judgment be granted. (ECF No. 28). The parties are advised:

1. Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

///

///

///

///

9

## V. Recommendation

**IT IS THEREFORE RECOMMENDED** that Libby's motion for summary judgment (ECF No. 28) be **GRANTED** and judgment entered accordingly.

DATED: September 16, 2020.

_____
UNITED STATES MAGISTRATE JUDGE